UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION OF<br>ELECTRONIC, ELECTRICAL,<br>SALARIED, MACHINE AND<br>FURNITURE WORKERS (AFL-CIO),<br>LOCAL 84907, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:06-cv-0275-DFH-JMS |
| v. | ) ) | |
| VISTEON SYSTEMS, LLC, | ) ) | |
| Defendant. | ) | |

ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


When parties agree to resolve their disputes by arbitration, they usually expect quick, conclusive, and relatively inexpensive resolution. It does not always work out that way. Plaintiffs International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers and its Local 84907 (collectively, the "Union") filed this case against defendant Visteon Systems, Inc. to enforce an arbitrator's award resolving disputes the parties had concerning wage rates under a collective bargaining agreement. In August 2003, the Union filed a grievance challenging Visteon's calculation of certain cost-of-living adjustments required by their collective bargaining agreement. The parties submitted the grievance to an impartial arbitrator. The arbitrator concluded that Visteon had miscalculated the cost of living allowances owed to its Union workers and ordered a monetary

remedy based upon a proper recalculation of that benefit pursuant to his written arbitration award.

Visteon has not paid any of the additional wages in dispute. The Union filed this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce the arbitration award. The Union filed a motion for summary judgment (Docket No. 23) and a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Docket No. 21). Defendant Visteon argues that the arbitrator's award either: (1) supports its own claim that it owes the Union no back pay; or (2) was so ambiguous that the court must remand the matter to the arbitrator. For reasons stated below, the Union's motions for summary judgment and Rule 11 sanctions are both granted.

*Summary Judgment Standard*

Summary judgment should be granted when the pleadings, depositions, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers the undisputed facts and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). Summary judgment is

particularly appropriate when parties agree – as they do here – that there are no genuine issues of material fact in dispute and the contested issues are purely legal ones.  *Amax Coal Co. v. United Mine Workers*, 92 F.3d 571, 575 (7th Cir. 1996).

*Facts for Summary Judgment*

Defendant Visteon manufactures automobile components at a plant in New Bedford, Indiana.  The Union represents a number of workers at this plant.  As part of a collective bargaining agreement in force from 1999 through 2004, Visteon agreed to pay a quarterly "cost-of-living add-on" to Union workers based on fluctuations in the National Consumer Price Index.  The relevant portion of the agreement provides:

> A cost-of-living "add-on" based on the National Consumer Price Index for Urban Wage Earners and Clerical Workers (base 1967 = 100) as published by the United States Bureau of Labor Statistics using the rental equivalency component, will be adjusted quarterly.  The "add-on" will be $.01 for each 0.4 difference between the following measurement periods and the Applicable Base Index.  In the event that the Bureau of Labor Statistics (BLS) ceases to publish the 1967 Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) during the term of this agreement, the remaining adjustments will be calculated using the 1993-95 CPI-W, when and if a new CPI-W is published, and converting the 0.4 that is currently used in the calculation to the nearest equivalent decimal point number using the conversion factor(s) then available from the BLS.

> As of March 17, 1999, the "add-on" will be based on the Index for March, 1999.

> As of August 16, 1999, the "add-on" will be based on the Index for June, 1999.

> As of November 15, 1999, the "add-on" will be based on the Index for September, 1999.

The Applicable Base Index for the preceding three (3) periods will be the Consumer Price Index for September, 1998 (477.2). In no event will the combined increases to the "add-on" exceed that which would be generated by a five percent (5%) change from the Applicable Base Index. (e.g. 477.2 + 5% = 501.1). The first $0.02 for each adjustment will not be paid as wages nor included in the cost-of-living "add-on" from that date forward in order to partially offset insurance costs, and the cost of new benefits included in this Agreement.

The parties used similar language to prescribe cost of living "add-ons" in other quarters. The collective bargaining agreement continued in relevant part:

In the event that the adjustment for a particular quarterly period, as a result of the movement in the CPI is zero ($0.00) or is a reduction, the applicable offset ($0.02 or $0.03 as described above) will not be applied, and if the adjustment, as a result of the movement of the CPI is $0.01 or $0.02 as applicable, only an equal amount of the offset will apply. Any unused offset as a result of this paragraph will be limited to $0.01 per quarter and carried over to the next quarter, or quarters, where it can be applied.

Docket No. 15, Attachment 7.

In August 2003, the Union filed a grievance challenging defendant Visteon's method of calculating these cost-of-living add-ons. The Union alleged Visteon made four types of mistakes at various points: (1) it failed to use the correct "Applicable Base Index" to determine the change in the Consumer Price Index for a number of quarters; (2) it miscalculated how much to deduct from the cost-of-living add-on in order to offset partially the cost of insurance and new benefits (the "offset" amounts); (3) it committed mathematical errors; and (4) it committed transcription errors. Award at 9. According to the Union, these repeated errors

ultimately resulted in an underpayment of $1,722,307 over the life of the collective bargaining agreement.  *Id.* at 35.

After initial steps of the grievance procedure failed to produce a resolution, the parties selected arbitrator Edwin R. Render to settle the matter under the procedures that were part of the collective bargaining agreement.  In March 2005, the parties presented the arbitrator with their dispute over the cost-of-living add-ons.  Both sides had an opportunity to present evidence, offer oral argument, and submit post-hearing briefs.  *Id.* at 2.

In August 2005, the arbitrator issued his decision.  He sustained the Union's grievance, with one exception.  He agreed that Visteon had miscalculated both the cost-of-living add-ons and the appropriate offset amounts during the term of the collective bargaining agreement.  *Id.* at 60.  He also agreed that Visteon had committed transcription and computation errors.  *Id.*  His only disagreement with the Union's grievance was that he found the terms of the collective bargaining agreement prevented him from granting a monetary remedy dating all the way back to 1999 when Visteon first began making these errors.  He limited the monetary remedy to a period starting five days before August 29, 2003, the day the Union filed its grievance.  *Id.*  The arbitrator ordered an award remedy based on an accurate recalculation of past cost-of-living add-on amounts.

In response, Visteon did not pay the Union or its members any money. Visteon informed the Union that, based on its interpretation of the arbitration award, it had actually *overpaid* Union members to the tune of $80,600.  Docket No. 24, Ex. 1.  The Union contends that Visteon's refusal to pay is simply a continuation of Visteon's refusal to calculate properly the past cost-of-living add-ons, even after the arbitrator ruled against it.

*Discussion*

I.    *Enforcement of Arbitration Awards*

When federal courts are called upon to enforce arbitration awards made under collective bargaining agreements, the scope of judicial review is extremely narrow.  *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183 (7th Cir. 1985).  An arbitrator's award is "enforceable so long as it 'draws its essence from the collective bargaining agreement,' even if the court thinks the arbitrator misconstrued the contract."  *Id.* at 184, quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

It is "well-settled that the district court generally may not interpret an ambiguous arbitration award."  *Tri-State Business Machines, Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000), quoting *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 279 (7th Cir. 1992).  However, "remand for clarification is a disfavored procedure," and "a court is permitted to interpret and

enforce an ambiguous award if the ambiguity can be resolved from the record."
*Flender Corp.*, 953 F.2d at 280.

II.   *Quarter-by-Quarter Accumulation of Offset Amounts*

While there is no dispute over most aspects of the arbitrator's award, the parties disagree on how the arbitrator resolved one key issue.  According to the Union, the arbitrator concluded that Visteon was violating the collective bargaining agreement with its practice of "accumulating" or carrying-over offset amounts from quarter-to-quarter.[1]  Visteon disagrees.  After the arbitrator issued his ruling, Visteon continued to accumulate offset amounts from prior quarters when it recalculated past cost-of-living add-on amounts.

To illustrate the dispute, consider the cost-of-living calculations for 1999.  For the quarter beginning in May 1999, both sides agree that the rise in the Consumer Price Index should have resulted in an unadjusted cost-of-living add-on of $0.09 per hour.  Both sides also agree that the collective bargaining agreement allowed Visteon to "offset" or deduct $0.02 from this $0.09 add-on in order to defray the costs of insurance and other benefits.  Hence, Union workers should

---

[1]In addition to the Union's contention that Visteon improperly accumulated offset amounts quarter-by-quarter, it also accuses Visteon of continuing to use the wrong base index numbers to recalculate the cost-of-living add-ons.  Specifically, the Union contends that Visteon failed to use September Consumer Price Index figures to recalculate certain add-on amounts.  Docket No. 24.  Visteon does not dispute this particular claim.  The Union is therefore entitled to summary judgment on this issue.  Visteon must use September Consumer Price Index figures when recalculating the past cost-of-living add-on amounts.

have received an additional $0.07 per hour  (= $0.09 – $0.02) as an adjusted add-on for this quarter.

The dispute concerns the later quarters.  In August 1999, changes in the Consumer Price Index resulted in an additional $0.20 per hour unadjusted cost-of-living add-on.  The Union has argued that Visteon was entitled to deduct only a $0.02 per hour offset from this amount, meaning that Union workers should have received an increase of $0.18 (= $0.20 – $0.02) in their adjusted add-on for the quarter beginning in May 1999.

Visteon has argued that both the collective bargaining agreement and the arbitrator's award entitled it to accumulate the offsets from previous quarters when arriving at the adjusted cost-of-living add-on, just as it had done prior to the grievance.  Thus, in calculating the adjusted add-on for August 1999, Visteon takes the $0.20 unadjusted add-on, subtracts the $0.02 offset from the August 1999 quarter, *and subtracts the $0.02 offset from the prior May 1999 quarter*, resulting in an adjusted add-on of only $0.16 per hour (= $0.20 – $0.02 – $0.02). Visteon applied similar reasoning to recalculate the adjusted add-on for subsequent quarters.  Over time, the cumulative effect has been substantial.

The role of this court, of course, is not to interpret the collective bargaining agreement but only to decide what the arbitrator decided.  See *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers*, 802 F.2d 247, 254

(7th Cir. 1986) (awarding sanctions against employer that brought frivolous challenge to validity of arbitration award; whether arbitrator interpreted agreement correctly "could make no difference in court").  Visteon argues that the arbitrator either actually ruled in its favor on this issue or rendered a decision that was so ambiguous it requires remand.  Visteon contends that the arbitrator failed to state plainly that it violated the collective bargaining agreement by performing quarter-by-quarter accumulations of applied offsets.  According to Visteon, the arbitrator's silence on the matter of quarter-by-quarter accumulation of offsets is particularly notable because it contrasts with his more detailed discussion of the company's other violations.

The arbitrator was not silent on this issue.  The inescapable and undisputed fact of this case is that the arbitrator unambiguously sustained the Union's grievance on all counts save for the one limit about the timeliness of the grievance and the resulting limits on the back pay remedy:

> Based on the provisions of the contract, the testimony given at the hearing and the arguments of the representatives of the parties, the Arbitrator has concluded that the Company improperly calculated the "add-on" several times during the period of the 1999-2004 contract.  The Arbitrator has also concluded that the Company erroneously calculated the "offset" at various times during the life of that contract.  Finally, the Arbitrator has concluded that the Company made mathematical and transcription errors as alleged by the Union.  However, Article V, Section 1 of the contract precludes the Arbitrator from ordering compensation to the Union of the employees for any contractual violations prior to five working days prior to the filing of the grievance.  *The grievance is sustained insofar as it alleges violations of the computation of the COLA which are timely.*

Award at 52 (emphasis added).  The award thus unequivocally sustained the Union's grievance on all counts except for the single issue of timing.

The undisputed evidence also shows that the arbitrator clearly understood the Union's grievance, which he sustained, to include the challenge to Visteon's practice of accumulating applied offset amounts from quarter-to-quarter.  In the section of the award titled "Position of the Union," the arbitrator summarized the Union's claims in its grievance.  He classified the Union's claims into four general categories:

> According to the Union, the Company made four types of errors in calculating the COLA "add-on:"  (1) by not always following the contractual annual September base in calculating the "add-on," instead sometimes using a quarterly base; (2) by doubling, tripling and even quadrupling in a single quarter the insurance benefits offset amounts; (3) by making mathematical errors; and (4) by making transcription errors.

*Id.* at 19-20.  The second type of error is the accumulation of insurance adjustments to the cost-of-living add-ons, and it is the disputed issue here.  The arbitrator wrote that the Union was arguing:

> The error in the Company's computation of the insurance benefits offset began with the calculation effective August 20, 2001.  The Company simply invented the concept of "accumulated offsets."  The Company's mistake was stacking all three 2001 quarter's $0.03 offsets into this quarter.  The result was a $0.09 offset for the quarter.  The Company official who calculated the August, 2001 offset had previously calculated the offset amounts correctly by subtracting only that quarter's contractual $0.03 offset from the "add-on" amount, and by also subtracting $0.01 of offset carried forward from the February, 2001 calculation.  The effect of this is to reduce the cost-of-living increases.  *The Union argues that once an offset is applied in a quarter, it is not considered again in any subsequent quarter, because that new quarter has its own contractual offset amount.*  The contract clearly states

-10-

that the offset for any quarter will be either $0.02 or $0.03, with the possible addition of $0.01 from any carry over of unused offsets.

The method of calculation testified about by Dr. Daley follows the contract language. Accumulating offsets clearly violates the language of the contract that limits the amount of insurance benefits offsets that may be taken in any one quarter to either $0.02 or $0.03, depending on the quarter, with the possibility of an additional $0.01 reduction due to any carry over of offset amounts unused in previous quarters.

*Id.* at 23-24 (emphasis added). This passage shows beyond dispute that the arbitrator understood the Union's grievance to include an objection to Visteon's practice of accumulating offset amounts from one quarter to the next.

The arbitrator's ruling in favor of the Union on this issue is further underscored by the fact that he clearly rejected Visteon's main argument in support of its practice accumulating offset amounts. He wrote that Visteon was arguing that the Union's interpretation:

did not consider or give effect to all of the words of Article IV, Section 2 [of the contract]. The contract does state, 'the first two cents for each adjustment will not be paid as wages, nor included in the cost-of-living 'add-on' from that date forward to partially offset insurance costs and the cost of new benefits included in this agreement.'

*Id.* at 41. He recognized Visteon's argument that its practice of accumulating offset amounts properly gave force to the words "will not be paid as wages, nor included in the cost-of-living 'add-on' from that date forward." *Id.* at 43. Discussing the issue, the arbitrator noted:

-11-

> The Company argued that this [the Union's] interpretation of the contract, in effect, read out of the contract the first sentence quoted immediately above. The arbitrator disagrees.

*Id.* at 57.  The arbitrator could not have made his disagreement with Visteon any more explicit.

Visteon also places great emphasis on a single phrase in the arbitrator's discussion, claiming this sentence is inconsistent with the Union's position on the quarter-to-quarter accumulation of applied offsets.  The arbitrator's discussion reads: "It [referring to a contract provision] is designed to prevent the 'offset' from being lost in subsequent quarters when the CPI is rising."  *Id.* at 57.  Visteon insists that if the applied offset cannot be accumulated from quarter-to-quarter, those previous offset amounts would be "lost" in subsequent quarters and hence would contradict this statement by the arbitrator.

This is an unreasonable and tortured reading of the arbitrator's meaning.  The arbitrator's statement refers to the following contract provision:

> In the event that the adjustment for a particular quarterly period, as a result of the movement of the CPI, is zero ($0.00) or is a reduction, the applicable offset ($0.02 or $0.03 as described above) will not be applied, and if the adjustment, as a result of the movement of the CPI is $0.01 or $0.02 as applicable, only an equal amount of the offset will apply.  Any unused offset as a result of this paragraph will be limited to $0.01 per quarter and carried over to the next quarter, or quarters, where it can be applied.

*Id.* at 55.  The arbitrator's award interpreted this provision to ensure that Visteon was still credited for at least some portion of *unapplied* offsets – those that Visteon

could not apply immediately because of insufficient change to the Consumer Price Index in the applicable quarter. This credit, however, could amount to only $0.01 per hour per quarter, to be used in subsequent quarters when the CPI was rising. This, and only this, was the "offset" that could not be lost according to the arbitrator. Neither the provision nor the arbitrator's discussion supports Visteon's position that it could continually accumulate the entire offset amount from previous quarters and add them to the offsets in subsequent quarters.

Reading the award as a whole, there is no doubt the arbitrator sustained the Union's grievance against Visteon's practice of accumulating applied offsets. The arbitrator's award makes clear that he understood that the Union's grievance included a dispute over Visteon's practice of accumulating offset amounts quarter-to-quarter. The award confirms that when the arbitrator sustained the Union's grievance on *all* relevant counts, he was sustaining this central claim. Defendant's tortured reading of the arbitrator's award notwithstanding, there is no reason to remand the arbitrator's clear ruling in favor of the Union and against Visteon. The Union is entitled to summary judgment on the merits of its complaint to enforce the arbitrator's award.

III.    *Rule 11 Sanctions*

The Union has also moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11 authorizes the court to impose appropriate sanctions, including reasonable attorney's fees and expenses, upon attorneys or

the parties they represent.  Parties or their attorneys violate Rule 11 when they sign a pleading, motion, or other paper that, after reasonable inquiry, is not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.  Rule 11 does not require a finding of bad faith, *Burda v. M. Ecker Co.*, 2 F.3d 769, 774 (7th Cir. 1993), in contrast to the court's general authority to sanction vexatious challenges to labor-arbitration decisions, *Johnson Controls, Inc. v. United Ass'n of Journeymen Local 353*, 39 F.3d 821, 826 (7th Cir. 1994).  A party also violates Rule 11 by bringing legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation.  *Id.*; *National Wrecking Co. v. Int'l Brotherhood of Teamsters*, 990 F.2d 957, 963 (7th Cir. 1993).

The Seventh Circuit has often approved the use of sanctions when parties attempt to avoid complying with arbitration awards, especially in the context of collective bargaining agreements, and has done so against employers, unions, employees, and their lawyers.  See, *e.g.*, *CUNA Mutual Insurance Society v. Office & Professional Employees Int'l Union*, 443 F.3d 556, 561 (7th Cir. 2006) (collecting cases affirming Rule 11 sanctions in meritless challenges to arbitration awards); *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 691 (7th Cir. 1987) (awarding sanctions personally against employees' attorney in case that sought to avoid arbitration procedure altogether, and noting the "depressingly large number of recent cases" growing out of refusals to use or abide by grievance and arbitration procedures under collective bargaining agreements); *Hill v. Norfolk & Western Ry.*

*Co.*, 814 F.2d 1192, 1201 (7th Cir. 1987) (imposing sanctions against employee's attorney); *Int'l Brotherhood of Teamsters v. Elgin Eby-Brown Co.*, 670 F. Supp. 1393, 1400 (N.D. Ill. 1987) (granting plaintiff's motion for summary judgment and affirming arbitration award, as well as imposing Rule 11 sanctions against defendant).   Writing for the court more than twenty years ago, Judge Posner warned:

> A company dissatisfied with the decisions of labor arbitrators need not include an arbitration clause in its collective bargaining contracts, but having agreed to include such a clause it will not be permitted to nullify the advantages to the union by spinning out the arbitral process unconscionably through the filing of meritless suits and appeals.  For such conduct the law authorizes sanctions that this court will not hesitate to impose.
>
> Mounting federal caseloads and growing public dissatisfaction with the costs and delays of litigation have made it imperative that the federal courts impose sanctions on persons and firms that abuse their right of access to these courts. . . . Lawyers practicing in the Seventh Circuit, take heed!

*Dreis & Krump Manufacturing Co.*, 802 F.2d at 255-56 (citations omitted).

Rule 11 sanctions are appropriate in this case.  Visteon's arguments to the court were not reasonable under the circumstances.  See *Magnus Electronics Inc. v. Masco Corp.*, 871 F.2d 626, 629 (7th Cir. 1989) ("Under Rule 11, the district judge must determine, based on the objective record, whether a sanctioned party took a reasonable position under the circumstances").  Visteon argued that either: (1) it prevailed on the issue of the accumulated offset, or (2) the arbitrator's decision was ambiguous.  During the life of the collective bargaining agreement, Visteon erroneously calculated the cost-of-living add-on at several different times

and in multiple ways.  Before the arbitrator, the Union  laid out in great detail its objections to defendant's calculation methods.  Visteon vigorously opposed the Union's claims.  Both Visteon and the arbitrator fully understood that the Union objected to Visteon's practice of accumulating offset amounts quarter-to-quarter. Visteon argued to the arbitrator its different view.  As explained above, at the end of the day, the arbitrator explicitly rejected Visteon's arguments and sustained plaintiffs' grievance in all respects except how far back in time the monetary remedy could reach.  There was no genuine ambiguity about the arbitration's decision on the issue of the accumulated offset; the Union won.

Visteon's unreasonable and obtuse reading of the arbitrator's award has needlessly delayed the arbitral process to the detriment of the Union.  See *Dreis & Krump Manufacturing Co.*, 802 F.2d at 255-56; *Ethyl Corp.*, 768 F.2d at 188 ("Concern has been expressed that some companies nowadays are trying to reduce the credibility of unions by dragging out the grievance process through challenges in court to arbitration awards").  After the arbitrator sustained the Union's grievance, defendant put its efforts into contorting the meaning of an unambiguous award rather than simply complying with it and paying the Union and its members.

The remaining task is determining an appropriate sanction for Visteon's unnecessary actions.  Rule 11 has both compensatory and deterrent aspects. *Johnson v. A.W. Chesterton Co.*, 18 F.3d 1362, 1366 (7th Cir. 1994).  The

compensatory purpose of the rule is to ensure "that the proponent of a position incurs the costs of investigating the facts and the law."  *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989).  The deterrent aspect allows the court "to impose a sanction that fits the inappropriate conduct." *Brown v. Fed'n of State Medical Boards*, 830 F.2d 1429, 1439 (7th Cir. 1987).  The appropriate sanction should include at least a reasonable attorney fee and costs incurred by the Union.

In its reply brief, the Union has proposed a punitive sanction, one that would go beyond direct remediation of the costs imposed on the Union.  The Union proposes an award of double damages, as is common under the Fair Labor Standards Act for violations of the duty to pay wages.  See 29 U.S.C. § 216; *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986) ("double damages are the norm" for FLSA violations).  Whether such a sanction would be appropriate in this case and would be supported by law is uncertain at best.  See *Diversified Technologies Corp. v. Jerome Technologies,Inc.*, 118 F.R.D. 445, 453 (N.D. Ill. 1988) (denying without prejudice a request for consequential losses allegedly caused by frivolous aspects of original litigation, including a broker's withdrawal from commitment to underwrite an initial public offering of stock).

At this stage, the question of the nature and scope of the Rule 11 sanction remains open, as does the allocation of responsibility for a financial sanction between Visteon and its counsel.  Two points are worth noting at this stage.  First,

given the serious nature of a Rule 11 sanction, courts are encouraged to adopt "the least severe sanction [that is] adequate to serve the purpose." *Brown*, 830 F.2d at 1437, quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987). Second, on the issue of allocation the Seventh Circuit has commented in this context: "The filing of an appeal should never be a conditioned reflex. 'About half the practice of a decent lawyer consists in telling would-be clients that they are damned fools and should stop.'" *Hill*, 814 F.2d at 1202, quoting 1 Jessup, Elihu Root 133 (1938).

Finally, a Rule 11 sanction may also take into account the court's time and effort, paid for by the public's taxes, that are wasted by frivolous litigation. See generally *Dominguez v. Figel*, 626 F. Supp. 368, 374 (N.D. Ind. 1986) (calculating Rule 11 sanctions by applying conservative estimate that each hour spent on case by district judge cost the government $600 in 1985), citing Levin and Colliers, *Containing the Costs of Litigation*, 37 Rutgers L. Rev. 219, 227 (1985); see also *Enright v. Auto-Owners Ins. Co.*, 2 F. Supp. 2d 1072, 1076 n.2 (N.D. Ind. 1998) (estimating that $600 rate should be increased to approximately $900 in 1998).

*Conclusion*

The Union's motion for summary judgment is hereby granted, and the court will enter final judgment accordingly. In light of the dispute that produced this litigation, the Union shall file with the court and serve on Visteon no later than 21 days after the issuance of this decision a proposed form of judgment that spells

out exactly the relief to which the Union is entitled under the arbitrator's award.
The Union's motion for Rule 11 sanctions is also granted.  To determine what the
sanction should be and how it should be allocated between Visteon and its
counsel, the court will use the following procedure.  The Union may submit a
detailed petition no later than 21 days after this entry, including documentation
of attorney fees and costs, and additional evidence and argument that might
support a claim for more punitive sanctions.  Visteon shall respond no later than
21 days after the Union files its submissions.  If no party requests an evidentiary
hearing or argument on the matter, the court will rule on the written submissions.
If any party requests a hearing, the court will schedule one.  If the parties believe
they might benefit from the court's assistance in resolving this matter by
agreement (perhaps with a brief extension of these deadlines), they should notify
the court staff and/or file an appropriate motion.

So ordered.

Date: February 20, 2007

_David F Hamilton_
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Joseph E. Allman
MACEY SWANSON AND ALLMAN
jallman@maceylaw.com

Michael H. Auen
FOLEY & LARDNER LLP
mauen@foley.com